[Cite as *State v. Vance*, 2026-Ohio-876.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>       Plaintiff-Appellee,<br><br>- vs -<br><br>DEVON M. VANCE,<br><br>       Defendant-Appellant. | CASE NO. 2025-L-087<br><br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br><br>Trial Court No. 2024 CR 001117 |

## OPINION AND JUDGMENT ENTRY

Decided: March 16, 2026
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Cory R. Hinton*, Hanahan & Hinton, L.L.C., 7351 Center Street, Suite 1, Mentor, OH 44060 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Devon M. Vance, appeals the judgment of conviction from the Lake County Court of Common Pleas after her plea of no contest to one count of Aggravated Possession of Drugs and one count of Possession of Drugs. Appellant argues that the trial court erred by denying her Motion to Suppress evidence seized from her person and her vehicle during a traffic stop. She argued a lack of reasonable suspicion to stop her vehicle and a lack of probable cause to search her vehicle for contraband.

{¶2} Having reviewed the record and the applicable caselaw, we find Appellant's assignment of error to be without merit. First, the officer witnessed Appellant commit two

traffic violations, which created not only reasonable suspicion, but probable cause, necessary to justify stopping her vehicle. Second, during the course of the traffic stop, the officer learned that Appellant's passenger had an active warrant, and the officer placed the passenger under arrest, this provided reasonable suspicion to extend the duration of the traffic stop. During this time, the officer observed Appellant attempting to take items from her purse and conceal them in the back seat of the car. He then discovered that she had attempted to conceal a digital scale from her purse and found the scale to have suspected drug residue on it. Upon discovering this, the officer had probable cause to arrest Appellant, and the remaining contraband was discovered on her person during a lawful arrest.

{¶3} Therefore, the judgment of the Lake County Court of Common Pleas is affirmed.

**Substantive and Procedural History**

{¶4} On November 22, 2024, the Lake County Grand Jury indicted Appellant on one count of Aggravated Possession of Drugs (Methamphetamine), a second-degree felony in violation of R.C. 2925.11(A), and one count of Possession of Drugs (Naloxone), a fifth-degree felony in violation of R.C. 2925.11(A). Appellant pled not guilty.

{¶5} On January 21, 2025, Appellant filed a Motion to Suppress, arguing: one, the officer lacked reasonable suspicion to conduct a traffic stop and detain her; and two, the officer lacked probable cause to search her vehicle and her person. Appellant further argued that the "scale" recovered from her vehicle was not a digital scale used for weighing contraband but was instead a bathroom-style scale meant to weigh a person. On January 31, 2025, the State responded to the Motion to Suppress.

Case No. 2025-L-087

{¶6} The trial court held a suppression hearing on March 27, 2025. The State called Detective Don Swindell of the Mentor Police Department as its sole witness. The State did not play any dash camera or body camera videos during the hearing. Appellant did not call any witnesses.

{¶7} Detective Swindell testified he had been promoted to Detective after the events leading to Appellant's arrest but before the suppression hearing. On September 9, 2024, Detective Swindell said that he was assigned to traffic patrol duties. He said that he saw a gray Chevy at the eastbound exit ramp for State Route 2 at State Route 306 in Mentor, Ohio. He watched the vehicle make a right turn on red "into the left straight only lane. In that area there's a clearly marked traffic control device, a sign that says that you're only allowed to make a right turn on red in the curb lane only." Detective Swindell said that there are two southbound turning lanes and that the gray Chevy did not make the right turn on red from the curbside lane. He also said the vehicle "made a wide turn, crossing over the double yellow line into the marked hazard zone, both driver side tires. It reentered that left straight lane and then it made a left turn into" the Suburban Inn located at 7677 Reynolds. Detective Swindell noted that the location and its surrounding area are known for numerous calls for police service.

{¶8} Detective Swindell said that upon observing a Traffic Control Device violation and a Marked Lanes violation, he effected a traffic stop of the vehicle in the Suburban Inn parking lot. On cross-examination, Detective Swindell confirmed that he was within a "couple hundred feet" of Appellant's vehicle when he saw the traffic violations.

{¶9}  Detective Swindell identified the driver as Appellant and the lone passenger as Appellant's husband. Detective Swindell said that he knew Appellant through prior involvements with the Mentor Police Department. After conducting the stop and identifying the occupants of the vehicle, Detective Swindell confirmed that the passenger had an active warrant for his arrest. Detective Swindell had the passenger exit the vehicle and detained him.

{¶10}  As Detective Swindell was placing the passenger in the rear of his police cruiser, he "observed" Appellant "inside the vehicle attempting to hide items." He saw her "digging items out of her purse and putting them on the floor in the front passenger area and then trying to put them behind the front seat . . . ." He said that his police cruiser was parked alongside her vehicle at a "forty-five degree angle . . . the way her vehicle was parked . . . would be . . . the side view of her vehicle." On cross-examination, he specified that he was approximately ten feet away from Appellant's vehicle. The stop occurred during the night, but the parking lot was well-lit, and Detective Swindell testified that the lights from his cruiser illuminated Appellant's vehicle.

{¶11}  After seeing Appellant engage in these movements, he confronted her about them and had her exit the vehicle. He said that Appellant "openly stated that she was hiding a scale behind the front seat." Detective Swindell testified that he did not think Appellant was talking about a bathroom scale but rather a "scale to weigh narcotics." He said that Appellant's purse was not large enough to hold a bathroom style scale. Based on her statement, Detective Swindell detained Appellant in the rear of his partner's patrol vehicle and then recovered a digital scale with what he believed was methamphetamine

Case No. 2025-L-087

residue on it located behind the passenger seat. He then searched Appellant's purse and found a methamphetamine pipe in the purse.

{¶12} Detective Swindell then contacted a female officer to respond to the scene in order to conduct a search of Appellant's person. He said that the responding officer searched Appellant and that a "large baggie of methamphetamine was located in her bra along with prescription pills, a hundred sixty dollars in currency and a Samsung cellphone."

{¶13} Detective Swindell testified that Appellant said that she had driven to Cleveland to pick up methamphetamine and that she was going to the Suburban Inn to give the drugs to a dealer staying at the hotel. When asked whether there were any recordings of the events he described, Detective Swindell explained that his vehicle is equipped with a dash camera but that it did not capture video of Appellant's traffic infraction or the subsequent search and arrest. In addition, the dash camera does not record sound. Finally, he said that there was no body camera footage of the arrest because the unit was not working.

{¶14} The State rested and, after a brief recess, the trial court issued an oral ruling from the bench. The trial court stated the following findings on the record:

> In this particular matter [Appellant] has raised two specific issues. One, she's challenged the stop of the vehicle and two she is challenging the search of the vehicle.
>
> In regards to the stop of the vehicle, the Defense's contention is that there were no grounds to stop the motor vehicle. There was no evidence of any traffic violations, infractions. [Appellant's] position that there was none that were committed by [Appellant].
>
> But the evidence showed differently.

Case No. 2025-L-087

{¶15} The trial court concluded that Appellant made "an illegal turn" by making a right turn on red when she was not in the curb lane and that she committed a "marked lanes violation" during that turn because "her tires went outside the marked lines."

{¶16} The trial court said that there was:

no evidence to the contrary. Defense argues that they were in the curb lane and turned into the curb lane. There's no evidence of that; none. The only evidence presented is what I just indicated and that's clearly a traffic violation and gave the officer . . . grounds to pull the vehicle over.

So [in] regards to the first issue raised by Defense regarding the stop of the vehicle, the Court finds that argument is without merit.

{¶17} Turning to the search of the vehicle, the trial court determined that the evidence supported the conclusion that Detective Swindell observed Appellant removing items from her purse, which

in and of itself could support, provide reasonable suspicion, which would allow the officer to search the vehicle. But there is more here; a lot more. It should also be noted that the officer knows [Appellant], has prior knowledge of [Appellant] and [Appellant's] history involving drug violations and involvement in this area.

But when he observed that and he approached the car and asked her what she was doing and she said she was hiding a scale. Defense wants to make an argument that it was a scale used to weigh herself on. Again, there's no evidence of that at all presented at this hearing. And it's certainly reasonable for the officer to believe that when she says she's hiding a scale which she removed from her purse, a common-size purse, that is a scale that is not used to stand on and weigh yourself, but a scale that is used to weigh drugs. And that's certainly a reasonable inference to make. She said she had a scale, it came from her purse. It's not Mary Poppins here pulling stuff out of a big bag. The conduct that was observed is inconsistent with a scale that's used to weigh people.

{¶18} The trial court concluded that Detective Swindell finding the scale and residue on it

certainly allowed the officer to then go further with the search. It was enough to place her under arrest for possessing drug paraphernalia, to search her,

Case No. 2025-L-087

to arrest her. There's nothing here which indicates the officer committed any Fourth Amendment violation. . . . [E]ven if she meant a regular scale, he doesn't have to accept that or believe that. Not under these circumstances where scales are often found.

{¶19}   The trial court therefore found that Appellant's Motion to Suppress lacked merit and denied it. The trial court issued a judgment entry incorporating its findings stated on the record and denying Appellant's Motion to Suppress.

{¶20}   On May 30, 2025, Appellant pled no contest to both counts of the indictment.

{¶21}   On June 23, 2025, the trial court sentenced Appellant to an indefinite prison sentence of three to four-and-a-half years on the second-degree-felony Aggravated Possession of Drugs count and eight months on the fifth-degree-felony Possession of Drugs count. The trial court ordered the sentences to run concurrently.

{¶22}   Appellant timely appealed raising one assignment of error.

**Assignment of Error and Analysis**

{¶23}   Appellant's sole assignment of error states: "The Trial Court Erred when it denied Defendant-Appellant's Motion to Suppress Evidence."

{¶24}   Appellant has raised two issues in her argument on appeal: First, Appellant argues that Detective Swindell lacked reasonable suspicion to conduct the traffic stop because Detective Swindell's testimony was impeached during cross-examination and he was not credible and because evidence of the violation was "unclear based on review of the dash camera footage." In essence, Appellant argues that the lack of the dash camera footage renders the traffic stop unreasonable and in violation of the Fourth Amendment.

Case No. 2025-L-087

{¶25} Second, Appellant argues that even if the traffic stop was justified, the search of Appellant's person and vehicle was unconstitutional because Detective Swindell lacked probable cause to expand the scope of the stop. In particular, she argues that her reference to a "scale" was referring to a "traditional 'scale' that a person would weigh themselves on, not a scale which would be considered contraband."

{¶26} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. At a hearing on a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *Id.*; *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). As a result, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* An appellate court reviews the trial court's application of the law to its factual findings de novo. *State v. Belton*, 2016-Ohio-1581, ¶ 100. Accepting the facts as true, the reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *Burnside* at ¶ 8.

{¶27} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const., amend. IV. The language of Article I, Section 14 of the Ohio Constitution is virtually identical and affords the same protections. *State v. Hoffman*, 2014-Ohio-4795, ¶ 11. "The touchstone of both is reasonableness." *State v. Brown*, 2020-Ohio-5140, ¶ 8 (11th Dist.).

{¶28} "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject

Case No. 2025-L-087

only to a few specifically established and well-delineated exceptions." (Footnote omitted.) *Katz v. United States*, 389 U.S. 347, 357 (1967). "When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *State v. Banks-Harvey*, 2018-Ohio-201, ¶ 18.

{¶29} "Courts must exclude evidence obtained by searches and seizures that violate the Fourth Amendment." *State v. Adams*, 2015-Ohio-3954, ¶ 181, citing *Mapp v. Ohio*, 367 U.S. 643 (1961) (extending the exclusionary rule to the states). "'The primary purpose of the exclusionary rule is to remove incentive from the police to violate the Fourth Amendment.'" *State v. Eggleston*, 2015-Ohio-958, ¶ 17 (11th Dist.), quoting *State v. Casey*, 2014-Ohio-2586, ¶ 29 (12th Dist.).

{¶30} The constitutionality of a traffic stop should be assessed in a manner similar to that of a brief detention under *Terry v. Ohio*, 392 U.S. 1 (1968), rather than a formal arrest. *State v. Dunlap*, 2024-Ohio-4821, ¶ 16. "[P]ursuant to *Terry* . . . , a police officer may, under limited circumstances, detain an individual and conduct a brief investigative stop." *State v. Gray*, 2000 WL 973411, *2 (11th Dist. July 14, 2000). As with a *Terry* stop, to initiate or continue a traffic stop, an officer must have at least a reasonable articulable suspicion of criminal activity based on "articulable facts that give rise to a reasonable suspicion that the individual is currently engaged in or is about to engage in criminal activity." *Id.*

{¶31} The Supreme Court has held that whether an officer had a reasonable suspicion to justify the investigative stop "must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of

Case No. 2025-L-087

the syllabus. It is not possible to precisely define the reasonable suspicion necessary to initiate a stop, and the standard cannot be "reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *see Maumee v. Weisner*, 1999-Ohio-68, ¶ 14. Reasonable suspicion is less than probable cause but "something more than an 'inchoate and unparticularized suspicion or "hunch."'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989), quoting *Terry* at 27. Relevant factors in determining whether an officer possessed reasonable suspicion to justify a brief detention include: the location of the stop being in a high crime area, whether the officer was aware of recent criminal activity in the area, the time of the stop, suspicious conduct, and the officer's training and experience. *State v. Freeman*, 64 Ohio St.2d 291, 295 (1980).

{¶32} Once an officer has initiated a lawful traffic stop based on reasonable suspicion, the officer may not extend the scope of the stop beyond the initial "'mission'" of the seizure. *Rodriguez v. United States*, 575 U.S. 348, 354-355 (2015). This typically means that an officer may only delay a motorist for the time necessary to issue a ticket or a warning. *State v. Batchili*, 2007-Ohio-2204, ¶ 12. "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Rodriguez* at 355, quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* An officer taking actions outside of this mission would render a traffic stop unlawful if the "'unrelated inquiries . . . measurably extend the duration of the stop.'" *Id.*, quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). Courts consider the

Case No. 2025-L-087

totality of the circumstances when considering whether an officer diligently completed the original purpose of the stop within a reasonable length of time. *Batchili* at ¶ 12.

{¶33} However, an officer may extend the duration of a traffic stop where the officer obtains additional facts that give rise to a reasonable articulable suspicion of criminal activity warranting additional investigation. *State v. Robinette*, 1997-Ohio-343, ¶ 27. The order to step out of the vehicle requires no constitutional quantum of suspicion. *State v. Evans*, 67 Ohio St.3d 405, 408 (1993). "[T]he circumstances surrounding the stop must 'be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *Bobo* at 179, quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C. Cir. 1976). Whether the continued seizure was reasonable is analyzed under the totality of the circumstances. *Robinette* at ¶ 30.

{¶34} "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." (Footnotes omitted.) *Katz*, 389 U.S. at 357.

> This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed *State v. Moore*, 2000-Ohio-10, ¶ 9.

{¶35} When a defendant is validly stopped for a traffic violation, "[t]o further detain the defendant and to conduct a search," an officer needs "probable cause." *Id.* at ¶ 10. "Probable cause means 'more than bare suspicion: Probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably

trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.'" *State v. McCorvey*, 2011-Ohio-3627, ¶ 18 (11th Dist.), quoting *Brinegar v. United States*, 338 U.S. 160, 175-176 (1949), quoting *Carroll v. United States*, 267 U.S. 132, 161 (1925).

{¶36} "Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate." *State v. Welch*, 18 Ohio St.3d 88, 92 (1985) "Probable cause can only be measured by objective facts known to a police officer *prior to* a warrantless search." (Emphasis in original.) *McCorvey* at ¶ 18. Whether an officer had probable cause to conduct a search is determined from the totality of the circumstances. *State v. Hynde*, 2005-Ohio-1416, ¶ 10 (11th Dist.).

**Lawful basis to conduct the traffic stop:**

{¶37} First, Appellant suggests that dash camera footage must corroborate a traffic stop to ensure the stop is supported by reasonable articulable suspicion. Specifically, Appellant's argument asserts that in her case, "proof of the traffic violations appear unclear based on the review of the dash camera footage. As a result thereof . . . the stop was done so in a manner which was unreasonable and in violation of Fourth Amendment Rights."

{¶38} This assertion is not well-founded. The testimony of one witness "standing alone" can be "sufficient to support a conviction." *In re Miller*, 2002-Ohio-3360, ¶ 48 (11th Dist.). "[I]t is well settled that 'physical evidence is not required to establish a defendant's guilt beyond a reasonable doubt.'" *State v. Bryant*, 2022-Ohio-3669, ¶ 31 (8th Dist.), quoting *State v. Lopez*, 2011-Ohio-182, ¶ 62 (8th Dist.). A "lack of physical evidence does not mean that the evidence the [S]tate did present was insufficient to convict a defendant

Case No. 2025-L-087

of the offenses with which he or she was charged." *State v. Bradley*, 2020-Ohio-3460, ¶ 34 (8th Dist.).

{¶39} In this case, the State presented one witness with no supporting video evidence to corroborate his testimony at a suppression hearing. Where a single witness, if believed, can sustain a criminal conviction, then a single witness, if believed, can establish a lawful basis to conduct a traffic stop, perform a probable cause search, and effect an arrest under the Fourth Amendment. Detective Swindell also explained that his dash camera would not have captured these violations because of the orientation of his cruiser. The lack of video evidence to support his testimony does not render the stop constitutionally unsound.

{¶40} Turning to the substance of the stop itself, the trial court's factual determinations reflect that it considered Detective Swindell's testimony and believed it. The trial court determined that he had "grounds to pull the vehicle over." The trial court emphasized that Detective Swindell's testimony was uncontroverted. He directly observed Appellant commit what he believed to be two traffic violations: the first, by turning right on red from a lane other than the curb lane when a traffic control device prohibited such action; the second, where both driver side tires crossed over the double yellow line while making the illegal right turn. It is unclear whether the trial court found that Detective Swindell had a "reasonable articulable suspicion" to justify an investigative stop or "probable cause" to do so.

{¶41} Although a traffic stop may be supported by probable cause, it need only be supported by a reasonable articulable suspicion of criminal activity. *See Heien v. North Carolina*, 574 U.S. 54, 61 (2014) (finding that reasonable suspicion to justify a traffic stop

may be based on a reasonable mistake of law). As long as this low threshold is met, the officer may lawfully detain the suspect to investigate. In this case, although the trial court did not so determine, we conclude the stop was supported by reasonable suspicion and, to the extent necessary, probable cause based on Detective Swindell's testimony that he directly observed Appellant commit two traffic violations.

**Search of Appellant's vehicle and person:**

{¶42} Next, Appellant's argument that officers lacked probable cause to search Appellant's vehicle and her person is not well taken.

{¶43} First, after conducting the stop, Detective Swindell discovered that the passenger in Appellant's vehicle, her husband, had an active warrant for his arrest. Therefore, it was proper for Detective Swindell to extend the scope of the stop to effectuate the passenger's arrest. *See Robinette*, 1997-Ohio-343, at ¶ 27.

{¶44} While Detective Swindell was doing this, he observed Appellant engage in what he regarded as suspicious behavior. The trial court found that Detective Swindell observed Appellant removing items from her purse and attempting to hide them behind the passenger seat of her vehicle. We must note that the trial court, issuing its ruling from the bench, said that Appellant "removing items from her purse and attempting to hide them behind the . . . the passenger seat. . . . quite frankly, that, in and of itself could support, provide reasonable suspicion, which would allow the officer to search the vehicle."

{¶45} This was an incorrect statement of the law. An officer must have probable cause to conduct a warrantless search of a vehicle, not merely a reasonable suspicion. *See Moore*, 2000-Ohio-10, at ¶ 6. However, this mistake of law is not a basis to reverse

Case No. 2025-L-087

the trial court's judgment because "reviewing courts affirm and reverse judgments, not the reasons for the judgments." *Geneva v. Fende*, 2009-Ohio-6380, ¶ 33 (11th Dist.).

{¶46} We find that, based on the totality of the circumstances, including the location of the stop at a known location for criminal activity, the time of day, Detective Swindell's familiarity with Appellant, and Appellant's suspicious behavior involving removing items from her purse and hiding them behind the passenger seat, Detective Swindell had a reasonable articulable suspicion of criminal activity. This permitted him to expand the scope of the traffic stop and further question Appellant about her conduct.

{¶47} When Detective Swindell questioned Appellant about removing items from her purse and hiding them in the vehicle, she admitted that she removed a scale from her purse. Appellant's purse was a typical-sized purse and would not have been able to hold a bathroom-style scale. Detective Swindell testified that he understood Appellant's reference to a scale to be to a small digital scale typically used for weighing narcotics

{¶48} At this point, given the totality of the circumstances already mentioned and Appellant's admission that she had removed a scale from her purse, which under the circumstances Detective Swindell believed was a small digital scale used for weighing narcotics, he had probable cause to justify a search of Appellant's vehicle.

{¶49} After conducting the probable cause search, Detective Swindell discovered a small digital scale with suspected drug residue on it and a methamphetamine pipe in Appellant's purse. At this time, Detective Swindell had probable cause to arrest Appellant for possession of drug paraphernalia. Therefore, the search incident to arrest of Appellant's person was justified, and the discovery of the narcotics on her person did not violate the Fourth Amendment.

Case No. 2025-L-087

{¶50} Accordingly, Appellant's sole assignment of error is without merit.

{¶51} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, P.J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2025-L-087

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignment of error is without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against Appellant.

_____
JUDGE JOHN J. EKLUND

_____
PRESIDING JUDGE MATT LYNCH,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-087